UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

TINA L. SMULLEN,                        )
                                        )
                Plaintiff,              )
                                        )
        v.                              )        Case No. 1:15-cv-187
                                        )
CAROLYN W. COLVIN,                      )
Acting Commissioner of Social Security, )
                                        )
                Defendant.              )

**OPINION AND ORDER**

This matter is before the court on the petition for judicial review of the decision of the

Commissioner filed by the plaintiff, Tina L. Smullen, on July 23, 2015.[1]  For the following

reasons, the decision of the Commissioner is **AFFIRMED**.

*Background*

The plaintiff, Tina L. Smullen, filed an application for Supplemental Security Income on

January 25, 2013, alleging a disability onset date of November 25, 2012.  (Tr. 23).  The

Disability Determination Bureau denied Smullen's application on April 8, 2013, and again upon

reconsideration on June 19, 2013.  (Tr. 23).  Smullen subsequently filed a timely request for a

hearing on August 15, 2013.  (Tr. 23).  A hearing was held on June 26, 2014, before

Administrative Law Judge (ALJ) William D. Pierson, and the ALJ issued an unfavorable

decision on September 20, 2014.  (Tr. 23–37).  Vocational Expert (VE) Marie N. Kieffer and

---

[1]     On December 7, 2015, this case was reassigned to Magistrate Judge Susan L. Collins upon the parties' consent under 28 U.S.C. § 636(c), and then was reassigned to Magistrate Judge Andrew P. Rodovich.  On August 5, 2016, the court ordered the parties to file any objection to Magistrate Judge Rodovich conducting all further proceedings in this case.  Because neither party filed an objection, this court finds that the parties voluntarily consent to Magistrate Judge Rodovich under 28 U.S.C. § 636(c).

Smullen testified at the hearing.  (Tr. 23).  The Appeals Council denied review, making the

ALJ's decision the final decision of the Commissioner.  (Tr. 9–12).

At step one of the five step sequential analysis for determining whether an individual is

disabled, the ALJ found that Smullen had not engaged in substantial gainful activity since

November 25, 2012, the alleged onset date.  (Tr. 26).  At step two, the ALJ determined that

Smullen had the following severe impairments:  obesity; minimal to mild left heel spurs; mild

degenerative knee changes; mild degenerative disc disease of the cervical and lumbar spines;

diabetes mellitus with neuropathy; asthma; bilateral hearing loss; and borderline intellectual

functioning.  (Tr. 26).  At step three, the ALJ concluded that Smullen did not have an impairment

or combination of impairments that met or medically equaled the severity of one of the listed

impairments.  (Tr. 26).  Specifically, he found that Smullen did not meet any of the following:

Listing 1.02, major joint dysfunction; Listing 1.04, spine disorders; Listing 2.10, hearing loss

without cochlear implantation; Listing 3.02, chronic pulmonary insufficiency; Listing 3.03,

asthma; Listing 11.14, peripheral neuropathies; and Listing 12.02, organic mental disorders.  (Tr.

27–28).

When determining whether Smullen met Listing 12.02, the ALJ considered the Paragraph

B criteria.  (Tr. 28–29).  He indicated that Smullen's mental impairment would satisfy the

Paragraph B criteria if it resulted in at least two marked restrictions or one marked restriction and

repeated, extended episodes of decompensation.  (Tr. 28).  The ALJ found that Smullen had no

limitations in daily living activities because she reported only physical difficulties with hygiene,

cooking, cleaning, shopping, and handling money.  (Tr. 28).  He also found that Smullen had not

established any social functioning limitations that would last at least twelve months.  (Tr. 28).  In

March 2013, Smullen reported that she had no problems relating to family, friends, or neighbors,

that she talked to her family daily, that she visited her children and grandchildren frequently, that she got along with authority figures, and that she had not lost any jobs due to an inability to get along with others. (Tr. 28). However, Smullen did testify that she took medication for mood swings, which had caused problems for years. (Tr. 28–29). She also testified that her medication helped her mood swings and that her treating physician did not recommend mental health counseling. (Tr. 29). The ALJ noted that Smullen did not allege mood swings in her Function Report, and that Dr. Tallon did not find that Smullen's mood swings would affect her ability to work. (Tr. 29).

The ALJ found that Smullen had moderate difficulties in concentration, persistence, or pace. (Tr. 29). He noted that Smullen had borderline intellectual functioning, which could affect her concentration, persistence, or pace. (Tr. 29). However, Smullen testified that she had no difficulty with basic reading or writing and that she could follow written and verbal instructions. (Tr. 29). Additionally, the consultative psychologist indicated that Smullen could handle her own finances and complete her daily living activities. (Tr. 29). The ALJ concluded that Smullen had not experienced any extended episodes of decompensation. (Tr. 29). The ALJ determined that Smullen did not satisfy the Paragraph B criteria because she did not have two marked limitations or one marked limitation and repeated episodes of decompensation. (Tr. 29). The ALJ also found that Smullen did not satisfy the Paragraph C criteria. (Tr. 29).

The ALJ then assessed Smullen's residual functional capacity (RFC) as follows:

> the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she can sit 6 hours out of an 8-hour workday; can stand and/or walk 2 hours out of an 8-hour workday; can lift, carry, push, and pull 10 pounds frequently and occasionally; can occasionally kneel, crouch, crawl, balance and squat; can do no overhead work activity or overhead reaching; cannot perform work in an environment involving more than a moderate level of noise; is not limited in fine

and gross manipulation; cannot climb ladders, ropes, and scaffolds; can occasionally use stairs and ramps, but no more than 1 to 2 flights with handrails; can occasionally bend and stoop; cannot work within close proximity to hazards of open heights or hazardous machinery or wet surfaces; cannot perform work requiring frequent exposure to airborne particulates such as dusts, gases and fumes; must avoid extreme humidity, heat, and cold; is limited to simple, routine and repetitive tasks, and is able to remember simple work-like procedures and maintain the concentration required to perform simple tasks; and is limited to basic reading skills such as those required to read lists and address labels.

(Tr. 30).  The ALJ explained that in considering Smullen's symptoms he followed a two-step process.  (Tr. 30).  First, he determined whether there was an underlying medically determinable physical or mental impairment that was shown by a medically acceptable clinical or laboratory diagnostic technique that reasonably could be expected to produce Smullen's pain or other symptoms.  (Tr. 30).  Then, he evaluated the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limited Smullen's functioning.  (Tr. 30).  The ALJ found that Smullen's impairments could cause her alleged symptoms, but that she was not entirely credible regarding the intensity, persistence, and limiting effects of the symptoms.  (Tr. 30–31).

Smullen testified that she could go out alone and drive to Wal-Mart and her daughter's home, which were nearby, but that she avoided going to places with a large number of people.  (Tr. 31).  However, the ALJ indicated that no medical evidence showed an impairment that would cause any fear or difficulty in crowds.  (Tr. 31).  Smullen reported that she had no difficulty with basic reading and writing or following instructions, but she also stated that she took special education classes in school and that she had a bad memory.  (Tr. 31).  Considering her testimony, the ALJ concluded that any memory issues would not preclude simple, routine, and repetitive tasks.  (Tr. 31).

Smullen reported hearing loss that made it difficult for her to understand what people were saying. (Tr. 31). She admitted that hearing aids could improve this, but she stated that she could not afford them. (Tr. 31). However, the ALJ and the consultative examiner did not notice any hearing issues during their interactions with Smullen. (Tr. 31). During the hearing, the ALJ asked Smullen whether her insurance would cover the costs of hearing aids. (Tr. 31). Dr. Bacchus found hearing loss, but he concluded that she could recognize words 84% on her left and 96% on her right. (Tr. 31).

Smullen claimed that she could not work because she had problems sitting, standing, and walking due to foot pain and numbness. (Tr. 31). She testified that walking caused back and neck pain, which occasionally radiated to her hips and buttocks or into her left shoulder respectively, that she could walk twenty to thirty minutes, and that she could sit for thirty to forty-five minutes in certain chairs. (Tr. 31). Smullen reported that she cared for her six grandchildren during the summer for three to four hours a day. (Tr. 32). Despite claiming that she had difficulty using her left arm above her head, the consultative physician did not find any neck or shoulder restrictions. (Tr. 32).

The ALJ noted that Smullen claimed her walking difficulties started in March or May 2013, which was after her alleged onset date, that her diabetic medications helped her symptoms, that she did not follow her diet, that her blood sugar levels were normal, that she did not have significant feet ulcers, and that her podiatrist provided only inserts. (Tr. 32). Additionally, the ALJ indicated that Smullen alleged neck pain beginning in December 2013, which was after her alleged onset date, that she claimed to use a cane but did not have a prescription, that Smullen did not complain of left heel spurring at the hearing, and that she used only over the counter

analgesics.  (Tr. 32).  The ALJ stated that the above findings did not bolster Smullen's allegations of disabling limitations or her credibility.  (Tr. 32).

The ALJ then reviewed Smullen's medical records from Matthew 25 Clinic during 2011 and 2012.  (Tr. 32).  He indicated that the records did not show ongoing retinopathy, significant neuropathy, significant atrophy from crepitus, hip dysfunction, knee issues, diabetes mellitus, hypertension, or heel spurring, or an unstable thyroid function.  (Tr. 32).  Considering the medical examination summary and the Matthew 25 Clinic records, the ALJ found that the records did not support allegations with greater limitations than those reflected in the RFC.  (Tr. 32).  Dr. Bacchus found some limitations, but he did not find any atrophy.  (Tr. 32).  He noted that Smullen had a normal, steady gait, that she did not use an assistive device, that she could hear conversational speech, and that she did not have joint swelling or instability.  (Tr. 32–33).  Dr. Bacchus concluded that Smullen could perform light to moderate duties while standing three to four hours non-continuously, which the ALJ found supported his RFC finding.  (Tr. 32–33).

Smullen testified that her primary care physician, Dr. Teresa Tallon, prescribed medication that improved her mood swings.  (Tr. 33).  Despite testifying that she had mood swings for years, Smullen only recently sought medication.  (Tr. 33).  Smullen stated that she got along with other people and that Dr. Tallon did not suggest mental health counseling.  (Tr. 33).  The ALJ did not give significant weight to Dr. Tallon's conclusion that Smullen was disabled due to neck and back pain, diabetes, and diabetic neuropathy.  (Tr. 33).  Additionally, Dr. Tallon found that Smullen had limitations regarding her abilities to stoop, balance, perform fine finger tasks, and reach in any direction.  (Tr. 33).

The ALJ stated that the Matthew 25 Clinic medical records and Dr. Bacchus's examination notes did not support Dr. Tallon's findings.  (Tr. 33).  Additionally, he found that

Dr. Tallon's notes did not show objective medical findings that supported her restrictions, such as atrophy, loss of reflexes, or decreased sensation. (Tr. 33). The ALJ also noted that diagnostic test results revealed mild, unremarkable results that did not support significant limitations. (Tr. 33–34). He explained that Smullen did not testify that she needed a cane, despite Dr. Tallon finding that she required a cane to walk most of the time. (Tr. 34). Furthermore, the ALJ indicated that Dr. Tallon did not explain how many hours Smullen could stand or work during an eight-hour work day, that she did not explain why Smullen's back issues prevented her from working even with medication, and that she did not show what medical evidence supported her sight, movement, and hearing limitations. (Tr. 34). Therefore, the ALJ gave Dr. Tallon's findings limited weight because she relied on Smullen's subjective complaints and the record did not support her findings. (Tr. 34).

The ALJ found that the medical records did not support Smullen's complaints of insomnia, frequent bathroom breaks, severe edema, or the need for a cane. (Tr. 34). Additionally, he found that the record did not show that Smullen's medications caused significant functional limitations that lasted for twelve months or that medication dosage or type changes could not accommodate. (Tr. 34). Because the record did not support those allegations, the ALJ stated that Smullen was less credible. (Tr. 34). However, the ALJ limited Smullen to sedentary work due to her foot pain and lifting restrictions, he limited Smullen's postural maneuvers due to her neck and back pain, and he limited her access to airborne particles and excessive noise levels to accommodate her hearing and asthma problems. (Tr. 34).

The consultative physician found that Smullen could perform light to moderate work while avoiding hazards, and the State agency medical reviewer found that she could perform light work with postural and environmental limitations. (Tr. 35). The ALJ gave those opinions

significant weight because they were consistent with the medical evidence and the ALJ's RFC finding. (Tr. 35). However, the ALJ did provide greater restrictions to account for Smullen's foot pain. (Tr. 35). The State agency psychological consultant found that Smullen could handle semi-skilled work that included only superficial interaction with others. (Tr. 35). The ALJ discounted that opinion because Smullen had few, if any, social limitations and she did not have a history of semi-skilled work. (Tr. 35). The ALJ gave some weight to the agency's conclusion that Smullen had moderate concentration, persistence, or pace limitations because it was consistent with his findings. (Tr. 35). Additionally, the ALJ found that Smullen's report of her daily living activities did not contradict the RFC when considering that the record did not support her credibility. (Tr. 35).

At step four, the ALJ found that Smullen could not perform her past relevant work. (Tr. 35). Considering Smullen's age, education, work experience, and RFC, the ALJ concluded that there were jobs in the national economy that she could perform, including addresser (200 jobs in Indiana and 38,000 jobs nationally), surveillance systems monitor (200 jobs in Indiana and 15,500 jobs nationally), and document preparer (16,000 jobs in Indiana and 790,000 jobs nationally). (Tr. 35–36).

*Discussion*

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is limited to a determination of whether those findings are supported by substantial evidence. **42 U.S.C. § 405(g)** ("The findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive."); ***Moore v. Colvin***, 743 F.3d 1118, 1120–21 (7th Cir. 2014); ***Bates v. Colvin***, 736 F.3d 1093, 1097 (7th Cir. 2013) ("We will uphold the Commissioner's final decision if the ALJ applied the

correct legal standards and supported her decision with substantial evidence."); ***Pepper v. Colvin***, 712 F.3d 351, 361–62 (7th Cir. 2013); ***Schmidt v. Barnhart***, 395 F.3d 737, 744 (7th Cir. 2005); ***Lopez ex rel Lopez v. Barnhart***, 336 F.3d 535, 539 (7th Cir. 2003).  Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept to support such a conclusion."  ***Richardson v. Perales***, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 852 (1972) (quoting ***Consol. Edison Co. v. NLRB***, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 2d 140 (1938)); *see* ***Bates***, 736 F.3d at 1098; ***Pepper***, 712 F.3d at 361–62; ***Jens v. Barnhart***, 347 F.3d 209, 212 (7th Cir. 2003); ***Sims v. Barnhart***, 309 F.3d 424, 428 (7th Cir. 2002).  An ALJ's decision must be affirmed if the findings are supported by substantial evidence and if there have been no errors of law.  ***Roddy v. Astrue***, 705 F.3d 631, 636 (7th Cir. 2013); ***Rice v. Barnhart***, 384 F.3d 363, 368–69 (7th Cir. 2004); ***Scott v. Barnhart***, 297 F.3d 589, 593 (7th Cir. 2002). However, "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues."  ***Lopez***, 336 F.3d at 539.

Supplemental insurance benefits are available only to those individuals who can establish "disability" under the terms of the Social Security Act.  The claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  **42 U.S.C. § 423(d)(1)(A)**.  The Social Security regulations enumerate the five-step sequential evaluation to be followed when determining whether a claimant has met the burden of establishing disability. **20 C.F.R. § 416.920**.  The ALJ first considers whether the claimant is presently employed or "engaged in substantial gainful activity."  **20 C.F.R. § 416.920(b)**.  If she is, the claimant is not disabled and the evaluation process is over.  If she is not, the ALJ next addresses whether the

claimant has a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities." **20 C.F.R. § 416.920(c)**; *see Williams v. Colvin*, 757 F.3d 610, 613 (7th Cir. 2014) (discussing that the ALJ must consider the combined effects of the claimant's impairments). Third, the ALJ determines whether that severe impairment meets any of the impairments listed in the regulations. **20 C.F.R. § 401, pt. 404, subpt. P, app. 1**. If it does, then the impairment is acknowledged by the Commissioner to be conclusively disabling. However, if the impairment does not so limit the claimant's remaining capabilities, the ALJ reviews the claimant's "residual functional capacity" and the physical and mental demands of her past work. If, at this fourth step, the claimant can perform her past relevant work, she will be found not disabled. **20 C.F.R. § 416.920(e)**. However, if the claimant shows that her impairment is so severe that she is unable to engage in her past relevant work, then the burden of proof shifts to the Commissioner to establish that the claimant, in light of her age, education, job experience, and functional capacity to work, is capable of performing other work and that such work exists in the national economy. **42 U.S.C. § 423(d)(2); 20 C.F.R. § 416.920(f)**.

First, Smullen has argued that the ALJ failed to consider whether her mood swings were a medically determinable impairment at step two. At step two, the claimant has the burden to establish that she has a severe impairment. *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010). A severe impairment is an "impairment or combination of impairments which significantly limits [one's] physical or mental ability to do basic work activities." **20 C.F.R. §§ 404.1520(c), 404.1521(a)**; *Castile*, 617 F.3d at 926. Basic work activities include "the abilities and aptitudes necessary to do most jobs," such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling." **20 C.F.R. § 404.1521(b); *Stopka v. Astrue***, 2012 WL 266341,

at *1 (N.D. Ill. Jan. 26, 2012). "[A]n impairment that is 'not severe' must be a slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities." Social Security Ruling 96-3p, 1996 WL 374181, at *1. Courts have characterized step two as a *de minimis* screening device that disposes of groundless claims. ***Johnson v. Sullivan***, 922 F.2d 346, 347 (7th Cir. 1990); ***Elkins v. Astrue***, 2009 WL 1124963, at *8 (S.D. Ind. April 24, 2009) (citing ***Webb v. Barnhart***, 433 F.3d 683, 688 (9th Cir. 2005)); *see **Stopka***, 2012 WL 266341 at *1 (listing cases supporting same).

Smullen has claimed that the ALJ failed to explain why her mood swings were not a medically determinable impairment and that he ignored lines of evidence supporting Smullen's mood swings. However, the ALJ addressed Smullen's mood swings when evaluating her mental impairments under the Paragraph B criteria. (Tr. 28–29). He found that Smullen did not have a limitation in social functioning and noted that Smullen did not have problems relating to family, friends, or neighbors, that she talked with her family every day, that she visited her daughter and grandchildren frequently, and that she got along with authority figures. (Tr. 28). Additionally, the ALJ reviewed Smullen's testimony that she had problems with mood swings for years that had worsened recently. (Tr. 29). The ALJ indicated that Smullen started medication that improved her mood swings, that Dr. Tallon, her treating physician, did not suggest mental health counseling or find that Smullen's mood swings would affect her work-related abilities, and that Smullen did not allege mood swings in her function report. (Tr. 29). Therefore, the ALJ concluded that there was "no persuasive medical evidence that [Smullen's] mood swings ha[d] existed, and imposed significant limitations of function, for at least 12 months or [we]re expected to exist for 12 months." (Tr. 29).

Despite Smullen's complaint that the ALJ discussed her mood swings at step three rather than step two, "it is proper to read the ALJ's decision as a whole . . . because it would be a needless formality to have the ALJ repeat substantially similar factual analyses at both steps . . . ." ***Rice v. Barnhart***, 384 F.3d 363, n.5 (7th Cir. 2004). During his step three analysis, the ALJ reviewed the evidence regarding Smullen's mood swings and explained why they were not a medically determinable impairment. (Tr. 29). For example, he indicated that Smullen's medication improved her mood swings and that her treating physician did not recommend mental health counseling or find any work limitations caused by her mood swings. (Tr. 29). Although Smullen has claimed that the ALJ ignored evidence supporting her mood swings, she has not identified any evidence that the ALJ overlooked. Rather, she cited only her testimony at the hearing and Dr. Tallon's diagnosis. (Tr. 573, 659). But, as discussed above, Dr. Tallon did not find that her mood swings would affect her ability to work. The ALJ discussed Smullen's mood swings adequately and supported his step two finding with substantial evidence. Moreover, any error at step two was harmless. The ALJ found several severe impairments at step two and considered the aggregate effect of Smullen's ailments at step four. *See **Castile***, 617 F.3d at 927.

As part of her mood swings argument, Smullen stated briefly that the ALJ did not consider Listing 12.04, affective disorders, that the ALJ did not account for her mood swings in the RFC, and that the ALJ failed to develop the record regarding her mood swings. Listing 12.04 requires the claimant to meet both the A and B criteria or the C criteria. **20 C.F.R. § 404, subpt. P, app. 1, § 12.04**. Paragraph B required at least two marked restrictions or one marked restriction and repeated, extended episodes of decompensation. **20 C.F.R. § 404, subpt. P, app. 1, § 12.04(B)**. The ALJ found that Smullen's mental impairments did not cause any marked restrictions and that Smullen had not experienced any extended episodes of decompensation.

(Tr. 28–29).  Therefore, he concluded that Smullen did not satisfy the Paragraph B criteria.  (Tr. 29).  Paragraph C required a medically documented history of a chronic affective disorder for at least two years and one of the following:  repeated, extended episodes of decompensation; an inability to function outside a highly supportive living arrangement; or a finding that a minimal increase in mental demands or an environmental change would cause the claimant to decompensate.  **20 C.F.R. § 404, subpt. P, app. 1, § 12.04(C)**.  Even if mood swings qualify as an affective disorder, the ALJ found that Smullen did not meet any of the other three Paragraph C requirements.  (Tr. 29).  Thus, he found that Smullen did not satisfy the Paragraph C criteria either.  (Tr. 29).

Despite Smullen's argument, the ALJ considered Smullen's mood swings in his RFC analysis.  The ALJ reviewed Smullen's testimony that her medication improved her mood swings and noted that Dr. Tallon did not recommend mental health counseling.  (Tr. 33).  The ALJ did not need to include limitations that he found incredible or without medical support.  *See Simila v. Astrue*, 573 F.3d 503, 520–21 (7th Cir. 2009).  The ALJ supported his RFC finding with substantial evidence by reviewing the medical evidence and indicating that it did not support a mood swing impairment.

Finally, Smullen has not identified any mood swing evidence that the ALJ failed to consider.  She stated generally that the ALJ did not consider evidence, but "[m]ere conjecture or speculation that additional evidence might have been obtained in the case is insufficient to warrant a remand."  *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009) (quoting *Binion v. Shalala*, 13 F.3d 243, 246 (7th Cir. 1994)).  Without identifying specific, relevant facts that the ALJ overlooked, this issue does not warrant remand.  *Nelms* 553 at 1098 (citations omitted).

Next, Smullen has argued that the ALJ's credibility finding was patently wrong. This court will sustain the ALJ's credibility determination unless it is "patently wrong" and not supported by the record. ***Bates v. Colvin***, 736 F.3d 1093, 1098 (7th Cir. 2013); ***Schmidt v. Astrue***, 496 F.3d 833, 843 (7th Cir. 2007); ***Prochaska v. Barnhart***, 454 F.3d 731, 738 (7th Cir. 2006) ("Only if the trier of fact grounds his credibility finding in an observation or argument that is unreasonable or unsupported . . . can the finding be reversed."). The ALJ's "unique position to observe a witness" entitles his opinion to great deference. ***Nelson v. Apfel***, 131 F.3d 1228, 1237 (7th Cir. 1997); ***Allord v. Barnhart***, 455 F.3d 818, 821 (7th Cir. 2006). However, if the ALJ does not make explicit findings and does not explain them "in a way that affords meaningful review," the ALJ's credibility determination is not entitled to deference. ***Steele v. Barnhart***, 290 F.3d 936, 942 (7th Cir. 2002). Further, "when such determinations rest on objective factors or fundamental implausibilities rather than subjective considerations [such as a claimant's demeanor], appellate courts have greater freedom to review the ALJ's decision." ***Clifford v. Apfel***, 227 F.3d 863, 872 (7th Cir. 2000); *see* ***Bates***, 736 F.3d at 1098.

The ALJ must determine a claimant's credibility only after considering all of the claimant's "symptoms, including pain, and the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." **20 C.F.R. § 404.1529(a);** ***Arnold v. Barnhart***, 473 F.3d 816, 823 (7th Cir. 2007) ("[S]ubjective complaints need not be accepted insofar as they clash with other, objective medical evidence in the record."); ***Scheck v. Barnhart***, 357 F.3d 697, 703 (7th Cir. 2004). If the claimant's impairments reasonably could produce the symptoms of which the claimant is complaining, the ALJ must evaluate the intensity and persistence of the claimant's symptoms through consideration of the claimant's "medical history, the medical signs and laboratory findings, and

statements from [the claimant, the claimant's] treating or examining physician or psychologist, or other persons about how [the claimant's] symptoms affect [the claimant]." **20 C.F.R. § 404.1529(c);** *see Schmidt v. Barnhart*, 395 F.3d 737, 746–47 (7th Cir. 2005) ("These regulations and cases, taken together, require an ALJ to articulate specific reasons for discounting a claimant's testimony as being less than credible, and preclude an ALJ from merely ignoring the testimony or relying solely on a conflict between the objective medical evidence and the claimant's testimony as a basis for a negative credibility finding.").

Although a claimant's complaints of pain cannot be totally unsupported by the medical evidence, the ALJ may not disregard an individual's statements about symptoms solely based on objective medical evidence. SSR 16-3p, at *5[2]; *see Moore v. Colvin*, 743 F.3d 1118, 1125 (7th Cir. 2014) ("'[T]he ALJ cannot reject a claimant's testimony about limitations on her daily activities solely by stating that such testimony is unsupported by the medical evidence.'") (quoting *Indoranto*, 374 F.3d at 474); *Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004) ("If pain is disabling, the fact that its source is purely psychological does not disentitle the applicant to benefits."). Rather, if the

> [c]laimant indicates that pain is a significant factor of his or her alleged inability to work, the ALJ must obtain detailed descriptions of the claimant's daily activities by directing specific inquiries about the pain and its effects to the claimant. She must investigate all avenues presented that relate to pain, including claimant's prior work record, information and observations by treating physicians, examining physicians, and third parties. Factors that must be

---

[2]    The Social Security Administration updated its guidance about evaluating a claimant's symptoms. *See* SSR 16-3p, 2016 WL 1119029 (effective March 28, 2016). SSR 16-3p superseded SSR 96-7p and removed the term "credibility" from the Administration's policies. SSR 16-3p at *1. The new policy clarifies that an ALJ should not examine a claimant's character similar to an adversarial proceeding when evaluating the claimant's subjective symptoms. SSR 16-3p at *1. Although SSR 16-3p post-dates the ALJ hearing in this case, a regulation that clarifies rather than changes existing law is appropriate on appeal. *Pope v. Shalala*, 998 F.2d 473, 482–83 (7th Cir. 1993), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561 (7th Cir. 1999). Because SSR 16-3p clarifies the Administration's policies, this court will evaluate the ALJ's findings under the Administration's new guidance. *See Roper v. Colvin*, 2016 WL 3940035, at *3 (N.D. Ill. July 21, 2016) (finding it appropriate to consider the new regulation on appeal).

considered include the nature and intensity of the claimant's pain, precipitation and aggravating factors, dosage and effectiveness of any pain medications, other treatment for relief of pain, functional restrictions, and the claimant's daily activities. (internal citations omitted).

*Luna v. Shalala*, 22 F.3d 687, 691 (7th Cir. 1994); *see **Zurawski v. Halter***, 245 F.3d 881, 887-88 (7th Cir. 2001).

In addition, when the ALJ discounts the claimant's description of pain because it is inconsistent with the objective medical evidence, he must make more than "a single, conclusory statement . . . . The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, at *9; *see **Minnick v. Colvin***, 775 F.3d 929, 937 (7th Cir. 2015) ("[A] failure to adequately explain his or her credibility finding by discussing specific reasons supported by the record is grounds for reversal.") (citations omitted); ***Zurawski***, 245 F.3d at 887; ***Diaz v. Chater***, 55 F.3d 300, 307–08 (7th Cir. 1995) (finding that the ALJ must articulate, at some minimum level, his analysis of the evidence). The ALJ must "build an accurate and logical bridge from the evidence to his conclusion." ***Zurawski***, 245 F.3d at 887 (quoting ***Clifford v. Apfel***, 227 F.3d 863, 872 (7th Cir. 2000)). A minor discrepancy, coupled with the ALJ's observations is sufficient to support a finding that the claimant was incredible. ***Bates***, 736 F.3d at 1098. However, this must be weighed against the ALJ's duty to build the record and not to ignore a line of evidence that suggests a disability. ***Bates***, 736 F.3d at 1099.

Smullen has argued that the ALJ relied on disjointed facts that were incorrect, irrelevant to her ability to work, or were not examples of deception or exaggeration. She noted that the ALJ found that there was no medical evidence that supported her claim of fear or difficulty in

crowds.  Without citing any medical evidence, Smullen has claimed that her hearing loss and mood swings could cause difficulties in crowds.  She also has argued that the ALJ failed to explain why her worsening symptoms made her less credible.  Additionally, Smullen has claimed that the ALJ cherry-picked the evidence he needed to support his credibility finding.

The ALJ's credibility finding was not patently wrong.  First, he noted that the medical evidence did not support many of Smullen's claims.  For example, the ALJ mentioned that the record did not show a fear of crowds, any neck or shoulder motion limitations, frequent bathroom breaks, severe edema, or the need for a cane.  (Tr. 31, 32, 34).  The ALJ could not reject Smullen's claims based solely on the lack of supporting medical evidence, but he could consider the lack of medical evidence when deciding Smullen's credibility.  ***Smith v. Apfel***, 231 F.3d 433, 439 (7th Cir. 2000).

The ALJ also relied on his observations at the hearing to find Smullen less credible.  He indicated that Smullen alleged a hearing loss that made it difficult to understand what people were saying.  (Tr. 31).  However, during the hearing, the ALJ asked Smullen questions while looking down at his desk with his mouth facing the table, and Smullen answered the questions without issue.  (Tr. 31).  He found that Smullen could hear conversations at a normal level and noted that Smullen's consultative physical examiner also did not notice any hearing issues.  (Tr. 31).  Additionally, the ALJ mentioned Smullen's inconsistent testimony about her ability to walk.  (Tr. 31).  He indicated that Smullen first testified that she could not walk more than ten minutes, but she testified later that she could walk twenty to thirty minutes.  (Tr. 31).

In further support of his credibility finding, the ALJ reviewed Smullen's alleged neuropathy.  (Tr. 32).  He indicated that her diabetic medication improved her neuropathy, that she did not follow her diet, that her blood sugar levels were normal, that her podiatrist only

provided inserts, and that she did not have significant feet ulcers.  (Tr. 32).  He found that Smullen's statements did not support her credibility.  (Tr. 32).  Lastly, the ALJ found Smullen less credible because she alleged worsening symptoms after her alleged onset date.  (Tr. 32).

The ALJ should not have considered Smullen's failure to follow her diet when assessing her credibility.  Smullen testified that she "tr[ies] to pretty much stick to [her] diet" but that she has "some pop and some candy" occasionally.  (Tr. 633).  She also stated that she checked her blood sugar three times a day and that her blood sugar levels were normal.  (Tr. 633).  The ALJ has not explained why occasional noncompliance with her diet rendered Smullen incredible.  *See Everett v. Colvin*, 2015 WL 3485602, at *7 (N.D. Ind. June 2, 2015) (finding that the ALJ should not have considered the claimant's failure to follow his diet when assessing his credibility) (citations omitted).  The ALJ also failed to explain why Smullen's worsening symptoms made her less credible.  Without explanation, the ALJ failed to build a logical bridge from her worsening symptoms to a negative credibility factor.

However, those errors did not render the ALJ's credibility finding patently wrong because he also relied on other reasons when partially crediting her testimony.  He relied on his observations of Smullen at the hearing, the objective medical evidence, her inconsistent statements, and her treatment to support his credibility finding.  Furthermore, the ALJ did not reject all of Smullen's testimony because he included limitations that supported her claims.  For example, he limited her to sedentary work, restricted her overhead activity, and limited her exposure to noise.  (Tr. 30).  Despite Smullen's arguments, the ALJ did not rely on irrelevant facts or cherry pick the evidence.  Therefore, the ALJ's credibility finding was not patently wrong.

Smullen also has argued that the ALJ evaluated Dr. Tallon's opinion improperly. A treating source's opinion is entitled to controlling weight if the "opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. **20 C.F.R. § 404.1527(d)(2)**; *see Bates v. Colvin*, 736 F.3d 1093, 1099 (7th Cir. 2013); ***Punzio v. Astrue***, 630 F.3d 704, 710 (7th Cir. 2011); ***Schmidt v. Astrue***, 496 F.3d 833, 842 (7th Cir. 2007). The ALJ must "minimally articulate his reasons for crediting or rejecting evidence of disability." ***Clifford v. Apfel***, 227 F.3d 863, 870 (7th Cir. 2000) (quoting ***Scivally v. Sullivan***, 966 F.2d 1070, 1076 (7th Cir. 1992)); *see* **20 C.F.R. § 404.1527(d)(2)** ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.").

"'[O]nce well-supported contradicting evidence is introduced, the treating physician's evidence is no longer entitled to controlling weight' and becomes just one more piece of evidence for the ALJ to consider." ***Bates***, 736 F.3d at 1100. Controlling weight need not be given when a physician's opinions are inconsistent with his treatment notes or are contradicted by substantial evidence in the record, including the claimant's own testimony. ***Schmidt***, 496 F.3d at 842 ("An ALJ thus may discount a treating physician's medical opinion if the opinion is inconsistent with the opinion of a consulting physician or when the treating physician's opinion is internally inconsistent, as long as he minimally articulates his reasons for crediting or rejecting evidence of disability."); *see, e.g.*, ***Latkowski v. Barnhart***, 93 F. App'x 963, 970–71 (7th Cir. 2004); ***Jacoby v. Barnhart***, 93 F. App'x 939, 942 (7th Cir. 2004). If the ALJ was unable to discern the basis for the treating physician's determination, the ALJ must solicit additional information. ***Moore v. Colvin***, 743 F.3d 1118, 1127 (7th Cir. 2014) (citing ***Similia v. Astrue***,

573 F.3d 503, 514 (7th Cir. 2009)).  Ultimately, the weight accorded a treating physician's opinion must balance all the circumstances, with recognition that, while a treating physician "has spent more time with the claimant," the treating physician may also "bend over backwards to assist a patient in obtaining benefits . . . [and] is often not a specialist in the patient's ailments, as the other physicians who give evidence in a disability case usually are." *Hofslien v. Barnhart*, 439 F.3d 375, 377 (7th Cir. 2006) (internal citations omitted); *see Punzio*, 630 F.3d at 713.

In December 2013, Dr. Tallon stated that Smullen was disabled due to neck and back pain, diabetes, and diabetic neuropathy.  (Tr. 471).  The ALJ did not give that statement significant weight because Dr. Tallon's medical source statement, her treatment notes, and other medical evidence did not support that conclusion.  (Tr. 33).  Additionally, the ALJ stated that Dr. Tallon relied mostly on Smullen's subjective complaints.  (Tr. 34).  Smullen has argued that the medical evidence and Dr. Tallon's notes supported her opinion.  Although not cited by the ALJ, she also has argued that the ALJ should not have discounted Dr. Tallon's opinion based on her relatively short treating relationship.

The ALJ did not err by discounting Dr. Tallon's December 2013 statement that Smullen was disabled because that is an issue reserved to the Commissioner.  **20 C.F.R. § 416.927(d)(1)**; *see Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir. 2001).  Additionally, he minimally articulated his reasons for discounting the remainder of Dr. Tallon's opinion.  The ALJ stated that the record, including Smullen's treatment records and Dr. Bacchus's findings, did not support Dr. Tallon's opinion.  (Tr. 33–34).  Specifically, he noted that Dr. Tallon's records did not establish a positive straight leg raise, decreased sensation, atrophy, loss of strength, or loss of reflexes.  (Tr. 33).  Furthermore, he indicated that left hip x-rays were negative, that knee x-rays showed mild findings, that lumbar x-rays showed mild spondylosis and degenerative disc

disease, that MRIs revealed mild results without severe stenosis, and that computed tomography was unremarkable. (Tr. 33–34). The ALJ found those diagnostic test results inconsistent with Dr. Tallon's opinion, which included limitations related to Smullen's hip, an inability to stoop or balance, and a limited ability to reach in any direction. (Tr. 33).

Despite Dr. Tallon's opinion that Smullen needed a cane most of the time for walking, the ALJ indicated that Smullen did not testify that she needed a cane at the administrative hearing later that month. (Tr. 34). He also reviewed inconsistencies between Dr. Tallon's opinion and Dr. Bacchus's opinion. (Tr. 32–34). For example, Dr. Tallon found vision, hearing, and shoulder limitations, but Dr. Bacchus found that Smullen had 20/20 corrected vision, that she could hear conversational speech, and that she had 4/5 upper extremity strength without atrophy. (Tr. 32–33). The ALJ also reviewed Dr. Bacchus's findings that Smullen had 5/5 lower extremity strength, a slow and steady gait without a need for an assistive device, and preserved fine and gross dexterity. (Tr. 32–33).

Because the ALJ found Dr. Bacchus's opinion consistent with the other medical evidence, he accepted his opinion over Dr. Tallon's. (Tr. 34). The ALJ further discounted Dr. Tallon's opinion because she did not explain why Smullen's mild disc bulging, desiccation, and narrowing prevented her from working even with medication and because she relied largely on Smullen's subjective complaints. (Tr. 34). The ALJ provided several good reasons to discount Dr. Tallon's opinion.

Finally, Smullen has argued that the ALJ failed to account for all her limitations in the VE hypothetical and the RFC. The ALJ's RFC assessment and the hypothetical posed to the VE must incorporate all of the claimant's limitations supported by the medical record. ***Yurt v. Colvin***, 758 F.3d 850, 857 (7th Cir. 2014) (citing ***O'Connor-Spinner v. Astrue***, 627 F.3d 614,

619 (7th Cir. 2010)); ***Indoranto v. Barnhart***, 374 F.3d 470, 473–74 (7th Cir. 2004) ("If the ALJ

relies on testimony from a vocational expert, the hypothetical question he poses to the VE must

incorporate all of the claimant's limitations supported by medical evidence in the record.").  That

includes any deficiencies the claimant has in concentration, persistence, or pace.  ***Yurt***, 758 F.3d

at 857; ***O'Connor-Spinner***, 627 F.3d at 619 ("Among the limitations the VE must consider are

deficiencies of concentration, persistence and pace."); ***Stewart v. Astrue***, 561 F.3d 679, 684 (7th

Cir. 2009) (indicating the hypothetical question "must account for documented limitations of

'concentration, persistence, or pace'") (collecting cases).

    The most effective way to ensure that the VE is fully apprised of the claimant's

limitations is to include them directly in the hypothetical.  ***O'Connor-Spinner***, 627 F.3d at 619.

However, an ALJ's hypothetical may omit "concentration, persistence, or pace" when it is clear

that the ALJ's phrasing specifically excluded tasks that someone with the claimant's limitations

could not perform.  ***O'Connor-Spinner***, 627 F.3d at 619.  Additionally, courts may uphold a

hypothetical that does not mention "concentration, persistence, or pace" when the underlying

conditions were mentioned and the link between the underlying condition and the concentration

difficulties was apparent enough to incorporate those difficulties by reference.  *See **Simila***, 573

F.3d at 521–22 (upholding the hypothetical but indicating the failure to include the specific

limitations was "troubling").

    Smullen has argued that the ALJ failed to account for her social functioning limitations.

However, the ALJ found that she did not have any social functioning limitations, and he

supported that conclusion with substantial evidence.  The ALJ indicated that Smullen had no

problems relating to family, friends, or neighbors, that she talked with her family every day, that

she visited her daughter and grandchildren frequently, that she got along with authority figures,

and that she did not lose any jobs because of an inability to get along with others. (Tr. 28). Based on those findings, the ALJ rejected the State agency psychological consultant's opinion that limited Smullen to superficial interaction with others. (Tr. 35). He concluded that Smullen had few social limitations, which was inconsistent with the consultant's opinion. (Tr. 35). In addition, the ALJ found that Smullen's mood swings were not a severe impairment, as discussed above. Therefore, the ALJ supported his finding that Smullen did not have any social functioning limitations with substantial evidence. Thus, he did not need to include any social functioning limitations in the RFC or the VE hypothetical. *See Schmidt v. Astrue*, 496 F.3d 833, 846 (7th Cir. 2007) ("[T]he ALJ is required only to incorporate into his hypotheticals those impairments and limitations that he accepts as credible.") (citation omitted).

Next, Smullen has argued that the ALJ failed to account for her limitations in concentration, persistence, and pace. The ALJ found that Smullen had moderate limitations in concentration, persistence, and pace and limited her to performing simple, routine, repetitive tasks; remembering simple work-like procedures; maintaining the concentration required to perform simple tasks; utilizing basic reading skills such as those required to read lists and address labels; and working in an environment with a moderate noise level. (Tr. 29–30, 663–64). The ALJ stated that Smullen's borderline intellectual functioning caused her limitations, but he noted that she had no difficulty with basic reading and writing or following written or verbal instructions. (Tr. 29). However, he also credited the State agency psychological consultant's opinion, which found that Smullen had a moderate limitation in understanding, remembering, and carrying out detailed instructions. (Tr. 397). The State agency consultant did not find any other limitations in the sustained concentration and persistence section. (Tr. 397).

Smullen has argued correctly that the ALJ must incorporate her concentration, persistence, and pace limitations into the RFC and any VE hypothetical and that the most effective way is to include them directly. *O'Connor-Spinner*, 627 F.3d at 619. But the ALJ can omit concentration, persistence, and pace when the ALJ's phrasing specifically excluded tasks that the claimant could not perform. *O'Connor-Spinner*, 627 F.3d at 619; *see Varga v. Colvin*, 794 F.3d 809, 814–16 (7th Cir. 2015) (evaluating whether an ALJ's hypothetical question to a VE adequately accounted for all moderate difficulties in mental functioning in Section I of the MRFCA form). Here, the ALJ not only included a limitation to simple, routine, and repetitive tasks, but he also limited Smullen to simple work-like procedures, simple tasks, basic reading levels, and a moderate level of noise. (Tr. 30, 663–64). By limiting Smullen to simple work-like procedures, simple tasks, and basic reading levels, the ALJ accounted for Smullen's moderate limitation in understanding, remembering, and carrying out detailed instructions. (Tr. 397).

Finally, Smullen has argued that the ALJ failed to account for her frequent bathroom breaks, which would prevent her from working forty hours. Although Smullen complained of an overactive bladder that caused her to urinate ten to fifteen times a day, the ALJ found that the record did not support that allegation. (Tr. 34, 583). Additionally, he stated that the record did not show that the limitation lasted twelve months in duration or that the side effect could not be accounted for with changes in medication dosage or type. (Tr. 34). As discussed above, the ALJ's credibility finding was not patently wrong, and he found that Smullen was incredible regarding her claims of frequent bathroom breaks because there was a lack of support in the record. Because the ALJ did not find this claim credible and his credibility finding was not patently wrong, he did not need to incorporate any limitations for Smullen's claim of frequent bathroom breaks. *See Schmidt*, 496 F.3d at 846. Therefore, the ALJ supported his RFC finding

with substantial evidence and he properly relied on the VE's testimony about the jobs that Smullen could perform.

Based on the foregoing reasons, the decision of the Commissioner is **AFFIRMED**.

ENTERED this 29th day of August, 2016.

/s/ Andrew P. Rodovich
United States Magistrate Judge